PLEASANT PORTER ET AL v.

AILEEN CAMMACK TOBIN ET AL

5-5311                                    458 S. W. 2d 145

Substituted opinion on rehearing
delivered October 5, 1970

1314

*Beloit Taylor,* for appellants.

*Edwin Dunaway,* for appellees.

CONLEY BYRD, Justice. At issue between appellants Pleasant Porter, Bernard J. Birnbach and Beloit Taylor and appellees Aileen Cammack Tobin, Jeanne White Crenshaw, Ann Tucker Williams, Frank Broadus White and Kathryn White Boulware, residuary beneficiaries of a trust established by Kate G. Cammack, deceased, is the amount of fees due Pleasant Porter and Bernard J. Birnbach as trustees and Beloit Taylor as their counsel.

Appellees in the trial court pointed out that the trustees and their counsel had already received $27,000 each for their services to the trust, that their counsel, Mr. Taylor, had received $17,200 for probating Mrs. Cammack's estate and that Mr. Porter and Mr. Birnbach as executors had received $8,600 each. They then prayed that the court deny any additional fees to either the trustees or their counsel.

The trial court characterized appellants' request for allowance of fees as one for "additional compensation" or "extra compensation" and denied the trustees' request. It did allow appellant Taylor $2,500 as an additional legal fee for closing the trust estate. From this order appellants Porter, Birnbach and Taylor appeal.

The record shows that from time to time a partial allowance of fees was made to the trustees and their counsel. Typical of the orders so entered is that of 12-19-68 which provides:

> "The Court doth consider, order, adjudge and decree that the accounting of the Trustees of said estate and the distribution of assets therein reflected be and the same is hereby approved and confirmed in all respects, and that each of the Trustees, Pleasant Porter and Bernard J. Birnbach, and the Attorney for the Estate, Beloit Taylor, each be and they are hereby allowed, as partial compensation for their services, the sum of Three Thousand and No/100 Dollars ($3,000.00) to be charged against the ultimate fee to be allowed to each of them, and the Trustees are hereby authorized and directed to make disbursements accordingly, taking credit therefor in their accounting and crediting such amounts against total allowances for services as such allowances may be finally fixed by the Court."

The record also shows that the trust corpus at the beginning consisted of personalty valued at $121,055.65 and real estate valued at $288,325.00 for a total inventory value of $409,380.65. The real estate was comprised of 242 wholly owned individual parcels and 52 jointly owned parcels. The income of the trust from January 1, 1962, to November 4, 1969, was $1,236,081.14. Of this, $1,008,564.83 came from the sale of real estate—the balance came from profits on personalty, rental income, interest, etc.

A recapitulation of the accounting show the following:

| | |
|---|---|
| Trust Corpus | $ 409,380.65 |
| Income | 1,236,081.14 |
| Total to account for | $1,645,461.79 |
| Credits: | |
| Paid to Beneficiaries | $ 64,426.57 |

| | |
|---|---:|
| Income taxes | 257,743.97 |
| Gen. Property Taxes | 25,993.45 |
| Bookkeeping & Auditing | 5,600.00 |
| Abstracts & Title Ins. | 1,048.00 |
| Documentary Stamps | 1,260.60 |
| Surveys & Engineering | 3,712.25 |
| Insurance & Repairs | 1,315.50 |
| Miscellaneous | 814.16 |
| Fees of Trustees & Attorney | 81,000.00 |
| | |
| Total Credits | 442,914.50 |

Balance to account for $1,202,547.29

According to the accountings filed, the balance of $1,202,547.29 in the hands of the trustees consisted of realty inventoried at $119,370.00 and the remaining $1,083,177.29 was cash or its equivalent.

At the trial court hearing, appellants called as witnesses Edward L. Wright, Sr., Leon B. Catlett, James H. Rice, Jr., and W. R. Meeks. Appellees called appellants Pleasant Porter and Bernard J. Birnbach as hostile witnesses and rested.

Mr. Wright testified that he represented the Warren E. Lenon estate, a joint owner of some of the jointly owned Cammack properties. As such representative Mr. Wright had much praise for the skill and ability of the Cammack trustees. Based upon his personal observations, the records and his experience in estate and trust matters, he was of the opinion that an overall fee for the trustees and lawyer for services rendered should be $150,000.00. Against this would be credited the $81,000.00 already paid.

Mr. Leon Catlett, after reviewing the annual accountings filed and the results obtained, concluded that a minimum fee of $165,000.00 for the trustees and the lawyer for the handling of the estate would be most reasonable.

Mr. James H. Rice Jr., Senior Vice President, Trust and Estate Division of the First National Bank

in Little Rock, testified that he had been handling trust matters for eighteen years. Based upon an examination of the records and the results obtained it was his opinion that a reasonable fee for the two trustees and the attorney would be in the neighborhood of $160,000.00 to $180,000.00.

On cross-examination Mr. Rice stated that the bank for which he worked had a schedule of basic charges for trusts. The current schedule, adopted August 1, 1969, was necessary because the old schedule proved inadequate. At this point Mr. Rice was asked to calculate what the trustees' fees would be according to his bank's schedule. The record thereafter is as follows:

"A. Rent collected, $20,600.00, at five percent, $1,031.00. Notes and accounts collected, $362,-000.00. Basic annual personalty, $4,187,000.00. The calculations on the personalty at one half of one percent for the first $40,000.00 per annum and three eighths of one percent on the excess amounts to a total of $22,500.00. On the sale of real estate at $1,177,000.00 at ten percent, $117,000.00. Termination fee on $1,-500,000 at two percent, $30,000.00. The fee on the real estate held in the trust and inventory values over the eight year period, the value is $1,673,000.00. The fee calculated at one half of one percent on the first fifty thousand per annum would be $2,000.00, and three eighths of one percent on the excess, $4,800.00, for a total of $6,800.00. A total of all those figures is approximately $178,000.00.

Q. Now then, if you eliminated the termination fee and eliminated the ten percent real estate commission, what would the total be?

A. $147,000.00 less.

Q. What would the total be? My arithmetic is not very good.

A. $31,000.00.

Q. $31,000.00 total. Now if you used your six percent which you say is now the basic real estate charge but not in effect at the time the trust came into existence what would that be?

A. Approximately $70,600.00.

Q. So adding that to $31,000.00, what do we get?

A. $101,600.00.

Q. Which is substantially below your first estimate on what would be a reasonable fee, correct?

A. Yes, sir.

Q. Now as you stated you handle many estates. Is not the routine accounting and bookkeeping paid by your trust department out of your ordinary fees for handling the trust?

A. Yes.

Q. Auditing for income tax purposes and other things is an extra charge?

A. Yes.

Q. But the annual accounting routine, unless there is some specific problem, is paid out of your fee?

A. That is correct."

Mr. W. R. Meeks testified that the general real estate fee charged by realtors in and around Little Rock was ten percent on unimproved property and six percent on improved city property.

Mr. Pleasant Porter, called by the responding residuary beneficiaries as a hostile witness, testified that he had been a long time personal friend of Dan Cammack and that after his death, he and Mr. Birnbach assisted Mrs. Cammack in her affairs. That Mrs. Cammack made one sale of property on her own and that he considered it too cheap. Thereafter he and Mr. Birnbach assisted her in the sales of other property for more than Mrs. Cammack had been offered. Both he and Birnbach refused compensation for their efforts. However Mrs. Cammack gave each of them a city lot to compensate them. As trustees he and Birnbach, together with Mr. Taylor, sold some of the trust real estate to Pratt Remmel; to Dr. and Mrs. Bailey; to Pfeifer Development Company; and to the Airport Commission. On the Gunn property by Rivercliff, the first offer was $40,000 and the eventual sale price was $150,000. Mr. Porter's testimony as to other duties performed is as follows:

"Q. Now, Mr. Porter, in addition to making these sales, what actual duties as trustee did you perform?

A. All right. We inspected all easements that we made to Arkansas Power and Light, to U. S. Engineers and I guess I walked a hundred miles up and down that river at Dam Number 7, climbing those hills, arguing with the engineers and arguing with their attorneys and with the handling of that. And all the easements down in the East end. Birnie and I walked the first one down there where the big sewer went through. They started out offering us a thousand dollars for it. We ended up getting better than twenty thousand for it.

Appellant Bernard J. Birnbach, a retired abstractor, called as a hostile witness by appellees, related his personal contacts with both Mrs. Cammack and her husband. As trustee he looked after the taxes and the checks sent to the primary beneficiaries. According to him the first offer on the property sold to the Airport

Commission was $300,000 whereas the final sales price was $450,000.

The rule for ordinary compensation to trustees is set forth in Bogert on Trust, 2nd Ed. § 977 as follows:

"The following factors may be influential in ena- bling the court to reach a conclusion as to the appropriate amount of pay which should be grant- ed the trustee in a given case; the amount of capital and income received and disbursed by the trustee; the wages or salary customarily granted to agents or servants for performing like work in the com- munity; the success or failure of the administra- tion of the trustee; any unusual skill or experience which the particular trustee may have brought to his work; . . . the time consumed in carrying out the trust; the custom in the community as to allow- ances to trustees by settlors or courts and as to charges exacted by trust companies and banks; the character of the work done in the course of admin- istration, whether routine or involving skill and judgment; . . . ."

With respect to allowances for extra compensation Bogert, continuing in § 977, says:

"Allowances of extra compensation, over and above the statutory rate or the amount usually granted by the court in the exercise of its discretion, are dis- couraged, and should never be given for the per- formance of the ordinary duties of a trustee. *A show- ing of the performance of unusually skillful, ardu- ous, or prolonged work should be required, and detailed proof should be demanded.*" (Emphasis ours).

We categorize the fees here requested as a request for ordinary compensation rather than one for extra or additional allowances. Furthermore as we review the record a preponderance of the evidence shows that a reasonable fee to the appellants would exceed the partial allowances already awarded by the trial court. While

some members of the court differ on the amount, the one figure upon which we agree is that the trustees should not receive less than that charged by banks and trust companies. Consequently we reverse the trial court and direct that it award a fee of $101,600.00, against which the residuary beneficiaries are entitled to a credit of $81,000.00 for the partial allowances already paid.

In making this award, we are aware that Mr. Rice testified that under the bank's schedule the trustees should bear the burden of bookkeeping expenses, but here the trustees by agreement are voluntarily charging themselves with the payment of all counsel fees—a matter that is ordinarily in addition to the fees charged by trustees. Consequently the bookkeeping charges will be more than offset by the counsel fees assumed.

Our disposition hereof disallows the $2,500 Counsel fees allowed by the trial court.

Reversed and remanded.

GEORGE ROSE SMITH, JONES and HOLT, JJ., would deny the rehearing.